LIBERTY GLASS CO. v. LEMONS et al.

No. 34028.   March 21, 1950.
Rehearing Denied April 25, 1950.

*217 P. 2d 516.*

Earl Foster, of Oklahoma City, for petitioner.

Everett S. Collins and Streeter Speakman, Jr., both of Sapulpa, for respondent James F. Lemons.

Mont R. Powell, of Oklahoma City, for respondent Special Indemnity Fund.

O'NEAL, J. This is a proceeding to review an award of the State Industrial Commission in favor of James F. Lemons, herein referred to as claimant, against Liberty Glass Company (self-insured), herein referred to as Liberty Glass.

Claimant was employed by Liberty Glass as floor boy. On July 20, 1947, while engaged in said employment, he stepped on a milk bottle and fell onto a metal conveyor, and, as he testified received an injury to his hip and back. He immediately reported the accident to his foreman. He continued to work until about September 3, 1947. On that date, while on the job, he became unable to continue the work, and, as he testified, "went down" on the job. He was sent, with some assistance from his foreman and another employee, directly from the plant to the office of Dr. C. M. Levy. Dr. Levy advised claimant that there was nothing wrong with him and told him he could return to work. A few days thereafter claimant went to see Dr. J. F. Curry who treated claimant that day and several days thereafter.

On September 10, 1947, claimant was placed in the city hospital where he remained under treatment until September 15, 1947, when he was released and a few days thereafter he was readmitted to the hospital where he remained for several days. He did not work after July 20, 1947, to the date of the hearing, September 29, 1948. At times he was unable to walk without the aid of crutches and at other times he could walk with the aid of a cane.

Commencing in September 1947, claimant was paid compensation for temporary total disability for a period of about eight months. For about six of the eight months claimant was unable to walk without crutches. At the date of the hearing he was able to walk with the aid of a cane.

From the date of his injury to the date of the hearing claimant was examined or treated by some seven or eight physicians. His first notice of injury and claim for compensation (Form 3) was filed with the State Industrial Commission December 29, 1947. On April 26, 1948, Liberty Glass filed notice that payment of compensation had been suspended or stopped for failure of claimant to report for medical examination on April 6, 1948, as requested in a letter dated March 23, 1948.

From the record it appears that claimant had in 1945 received a previous injury and had been awarded compensation therefor. Special Indemnity Fund filed an answer in which it denied each and every material allegation in claimant's Form 3, and further alleged that the prior injury, in combination with the subsequent injury, did not materially increase the disability over that disability caused by the last injury standing alone; alleging further that claimant is not a previously impaired person under the law.

Thereafter the matter was set for hearing as to the cause and extent of disability before Commissioner Grady H. Holloway. After hearing, Commissioner Holloway made findings of fact as follows:

"1. That on or about the 20th day of July, 1947, claimant was in the employ of respondent herein, engaged in a hazardous occupation, subject to and covered by the provisions of the Workmen's Compensation Law, and on said date claimant sustained an accidental personal injury, arising out of and in the course of his employment with respondent, consisting of an injury to his right leg, hip and back.

"2. That at the time of said injury, claimant's average daily wage was sufficient to entitle him to maximum compensation of $21.00 per week.

"3. That as a result of said injury, claimant was temporarily totally disabled from the performance of ordinary manual labor to April 18, 1948, for which period he has heretofore been paid compensation at $21.00 per week, less the five day waiting period.

"4. That as a result of said injury, claimant sustained a 50% permanent partial disability to and loss of use of his right leg, for which he is entitled to $1,837.50, 87½ weeks at $21.00 per week; that as a result of said injury, claimant sustained a 47½ permanent partial disability to and loss of use of his body as a whole or 47½ of a permanent total disability, for which he is entitled to $4,987.50, being 237½ weeks at $21.00 per week."

And further:

"5. That the Special Indemnity Fund should be dismissed as party respondent herein."

An award was ordered against Liberty Glass and this proceeding is to review the same.

It is first contended that there is no evidence to support the finding and order of the commission that "as a result of said injury claimant sustained 50% permanent partial disability to and loss of use of his right leg."

It is well settled that cause and extent of disability arising from accidental injury are questions of fact for Industrial Commission, and where there is any competent evidence reasonably tending to sustain commission's findings, an award based thereon will not be disturbed on review. Aggas Drilling Co. et al. v. Williams et al., 200 Okla. 277, 192 P. 2d 995.

In support of its contention Liberty Glass calls attention to the testimony of several physicians who testified in the matter. It is asserted that only one doctor testified as to the disability of claimant's leg; that this witness was Dr. Ian MacKenzie who testified in part:

"Now he (claimant) has full use of the right leg with no appreciable atrophy but has loss of sensation in the whole right leg. . . ."

And:

"I think his permanent disability, even if the anaesthesia does not disappear, is still not more than 15 to 20% of the leg."

Counsel for Liberty Glass asserts that at no other place in all the testimony is there any reference to any permanent partial disability to claimant's leg. Counsel has apparently overlooked the testimony of Dr. Louis A. Martin (Record pp. 35-37), wherein Dr. Martin states:

" . . . Patient (claimant) has only about 50% use of the right leg, he cannot completely extend or flex the knee (to do this one must push the right foot backward)." (sic)

And:

"Sensations: Complete loss of fine and coarse epicritic pain sensation over right lower extremity from a level approximately two inches below and parallel to inguinal ligament, extending all around the thigh, to a point halfway down the foot. This area has no sensation to pain or temperature. Remainder of body normal to sensory stimuli."

And further:

"Conclusion: Based upon my findings and the history given, I am of the opinion these injuries have been caused by the above described fall, and as a result this man is permanently and totally disabled to perform ordinary manual labor."

None of the other physicians would venture an opinion as to the extent and probable duration of claimant's injury.

Dr. Fred A. Glass testified, in part:

"Patient walks with a marked limp of right leg . . . There is rather marked tenderness over the right sciatic nerve just below the sciatic notch. He complains of pain radiating down posterior aspect of thigh as far as the knee with pressure on this point. . . . Today

the picture is that he walks with a very decided limp in his right leg and complains of extreme weakness. He complains of extreme pain upon the slightest pressure and has anesthesia over the entire right leg; by that I mean that you can stick pins in this leg and he says that he does not feel it. However, this anesthesia which he complains of in his right leg and which can readily be demonstrated is not consistent and it does not bear out anatomically the nerve that is involved."

The testimony of Doctors Martin and Glass is sufficient to sustain the finding of the State Industrial Commission as to the extent of permanent partial loss of the use of claimant's leg.

It is next contended that there is no evidence to support the finding of the commission that claimant sustained 47½ per cent permanent partial disability to his body as a whole.

Dr. J. F. Curry in his statement, in part, says:

"My diagnosis based upon X-Ray study:

"No. 1. Fracture, simple, communited in the inferior part of sacro-iliac, synchronodosis, right.

"No. 2: Neuritis, traumatic, sciatic nerve, right, as shown by loss of sensation and impairment of function of the right leg and secondary to injury of back.

"It is my opinion that this condition has been brought about by the injury which occurred on July 20, 1947, and as a result thereof, this man has a 60 to 70% disability to the body as a whole, which is believedd (sic) to be permanent. . . . Assuming that Mr. Lemons had a prior disability of 10%, by reason of the head injury already mentioned, I would conclude that a combination of the disabilities suffered in both the 1945 and 1947 injuries render him permanently and totally disabled to perform ordinary manual labor."

Counsel states that Dr. Curry's evidence conclusively shows that he took into consideration the disability of the leg received in 1947 as well as the disability received in the prior injury of 1945. This apparently is true as to the latter part of his statement. It shows that he took into consideration both injuries in arriving at his conclusions that combining the two injuries claimant was rendered permanently and totally disabled to perform ordinary manual labor. But the first part of Dr. Curry's statement shows that he was taking into consideration only the injuries suffered on July 20, 1947 (the last injury) in arriving at his opinion that claimant has 60 to 70 per cent disability to the body as a whole, which he believes to be permanent.

The testimony of Doctors Curry and Martin is sufficient to support the finding of the commission that claimant suffered 47½ per cent disability to the body as a whole from the injury received July 20, 1947.

It is next contended that the Special Indemnity Fund should not have been dismissed in this case. The contention is that the record shows that claimant has a disability which is not entirely attributable to the injury received in 1945 and not entirely attributable to the injury received in 1947.

There was some evidence of a previous injury and an award therefor. But Liberty Glass is not charged with payment of compensation of any disability beyond or in addition to the disability caused by the injury which claimant sustained in the accident of July 20, 1947. Therefore, Liberty Glass has no reason to complain because the State Indemnity Fund was dismissed as a party respondent herein.

It is next contended that the State Industrial Commission abused its discretion in not appointing a doctor to examine the report of other doctors, examine the claimant, and make recommendations to the commission.

We know of no rule, or necessity for a rule, which calls for the appointment of one physician to examine the reports of other physicians in Workmen's Com-

pensation cases. In Workmen's Compensation cases a physician testified as to facts and conclusions found and made from treatment or examination of the claimant. It is for the commission and not other physicians to construe or determine the weight or credit to be given to the reports or testimony of physicians.

The matter of appointment of physicians to examine claimants in Workmen's Compensation cases is largely within the discretion of the State Industrial Commission. The record in this case shows that some eight physicians examined or treated claimant and testified through statements to the commission as to their findings and conclusions.

The statements of two of the physicians were introduced by Liberty Glass.

In Kansas Explorations, Inc., v. Utton et al., 199 Okla. 159, 185 P. 2d 439, it is held:

"It is not an abuse of discretion for the State Industrial Commission to refuse to direct the examination of an injured employee by a disinterested medical expert witness in accordance with 85 O.S. 1941 §25, where under all the facts and circumstances a complete hearing has been had on the question of the disability involved in the proceeding."

Under the rule there stated the commission did not abuse its discretion in not appointing another physician to examine claimant.

Award sustained.

DAVISON, C. J., ARNOLD, V. C. J., and WELCH, CORN, GIBSON, HALLEY, and JOHNSON, JJ., concur.

Second Petition for Rehearing Denied April 25, 1950.